# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:23-CV-00878-GCM

| | |
|---|---|
| MARTIN SAMAAN, <br><br> Petitioner, <br><br> v. <br><br> DARIA SAMAAN, <br><br> Respondent. | **CONSENT ORDER** |

This Consent Order resolves the above-captioned civil action filed in this Court pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-11 ("ICARA"). Petitioner Martin Samaan ("Father") and Respondent Daria Samaan ("Mother") jointly request upon the Court to enter this Consent Order as a memorialization of their agreement and a final judgment on the merits. By their respective signatures hereto, each party stipulates to the findings of fact and each party voluntarily agrees to the terms and conditions Decreed herein. This Consent Order is entered into freely and voluntarily, and although entered by consent of the parties, Father and Mother acknowledge that this Order constitutes a judgment by this Court and is subject to enforcement by the contempt powers of the Court.

## I. Background

Father and Mother are the natural parents of K.S., a two-year-old male child ("K.S."). Father, an Egyptian citizen living in Germany, brought this action under the Convention, alleging the wrongful removal of K.S. to North Carolina and seeking the return of K.S. to Germany. On December 19, 2023, Father filed his verified Petition along with an *Ex Parte* Motion for a

Temporary Restraining Order ("TRO"). On December 20, 2023, the Court entered an *Ex Parte* TRO preventing Mother from removing K.S. from this Court's jurisdiction pending the resolution of these proceedings. On or about December 29, 2023, Mother and Father jointly moved the Court to enter a Consent Preliminary Injunction, in essence, extending the TRO, while permitting K.S. to remain with Mother in Fayetteville, NC, and allowing time for the parties to engage in settlement discussions. On January 2, 2024, the Court entered the Consent Preliminary Injunction, wherein the parties agreed that Mother would surrender the passports and travel documents for herself and K.S. to her counsel to be held in trust, and that Mother would not remove K.S. from the State of North Carolina pending the resolution of these proceedings. On January 11, 2024, the parties, through their counsel of record, submitted a Joint Status Report and Stipulations, which narrowed the issues for trial. Thereafter, respective counsel for the parties kept the Court updated as to the settlement discussions, which included extensive negotiations and an ongoing mediated settlement conference. On February 9, 2024, Mother, a Ukrainian citizen, filed a verified Response to Father's Petition denying that K.S.'s removal to North Carolina was wrongful and alleging various affirmative defenses. The Court scheduled a trial on the merits to commence March 25, 2024.

      The Court is now informed that the parties have continued to negotiate in good faith in an effort to resolve the claims and issues before this Court and have reached a global agreement as expressed in this Consent Order. The parties have agreed to the terms memorialized in this Consent Order without admitting to any liability or wrongdoing arising out of the facts or occurrences alleged in the pleadings. For all such findings of fact hereinbelow, the parties stipulate to those facts; and Father and Mother agree, and this Court by entering this Consent Order finds, that this Consent Order has been negotiated by the parties in good faith, that settlement of this matter without further litigation and without admission or adjudication of any other triable issue of fact

or law is appropriate and will avoid protracted and complicated litigation between the parties, and thus this Consent Order is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the parties to this Decree, it is ORDERED, ADJUDGED, and DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of this action pursuant to 22 U.S.C. § 9003(a) and 28 U.S.C. § 1331, under the Convention and federal question jurisdiction.

1. This Court has personal jurisdiction over the parties, in that Father is a resident of Germany and filed his Petition under the Convention, and that Mother is residing in North Carolina in the United States, where K.S. is also presently located.

2. The relevant countries, to wit: Germany, Ukraine, and the United States are all treaty partners under the Hague Convention.

3. Venue is proper in the Western District of North Carolina under 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, at the time of the Petition, Mother and K.S. were located in Davidson, North Carolina, within the Western District of North Carolina (Charlotte Division).

4. Solely for the purposes of this Consent Order and the underlying pleadings, the parties consent to the jurisdiction of this Court and to venue in this District.

## II. Findings of Fact

6. Father is the biological father of K.S. and Mother is the biological mother of K.S.

7. K.S. was born in Kharkov, Ukraine on September 19, 2021 (presently 2 years and 6 months old). K.S. is a Ukrainian citizen and resided in Ukraine from his birth until March 26, 2022. The parties are informed and believe that K.S. is also an Egyptian citizen due to Father's citizenship, although K.S. has never been to Egypt. Father is an Egyptian citizen, and Mother is a

3

Ukrainian citizen. Mother and K.S. have temporary protected status in the United States under the Uniting for Ukraine ("U4U") parole program up to approximately September 1, 2025, notwithstanding any extensions. *See Designation of Ukraine for Temporary Protected Status*, 87 Fed. Reg. 23211(April 19, 2022); *Extension and Redesignation of Ukraine for Temporary Protected Status*, 88 Fed. Reg. 56872 (Aug. 21, 2023).

8. On or about March 26, 2022, the parties left Ukraine and sought refuge in Germany to escape the Russo-Ukrainian War. Mother and K.S. were granted temporary protected status in Germany. Father was not afforded this protection, but later obtained an employment visa. On March 28, 2022, two days after arriving in Germany, Mother and Father have lived in separate housing thereafter. The parties dispute whether the move from Ukraine to Germany was intended to establish the K.S.'s habitual residence in Germany and ultimately whether Germany is the K.S.'s habitual residence within the meaning under the Convention.

9. The parties stipulate that both Father and Mother have "rights of custody" over K.S. as that phrase is used under the Convention.

10. Father provided K.S. with financial child support and exercised his parental and legal rights over K.S. at the time of the alleged removal. However, the parties dispute whether Father, while exercising his legal rights, consented, or otherwise acquiesced, to Mother removing K.S. from Germany to the United States.

11. K.S. is under sixteen (16) years old, and Father's Petition was timely filed within one (1) year of the alleged wrongful removal.

12. On or before August 18, 2023, Mother took K.S. from Germany to North Carolina in the United States.

13. While the circumstances of K.S.'s travel from Ukraine to Germany and from Germany to the United States are in dispute among the parties, the parties do not dispute that K.S. lived exclusively in Germany from March 26, 2022, until on or about August 18, 2023, and exclusively in Ukraine from birth and prior to March 26, 2022.

14. K.S. has been with Mother in North Carolina since on or about August 18, 2023, and shall remain in Mother's care pursuant to the Preliminary Injunction and this Consent Order until K.S. is placed into Father's care pursuant to the Decrees herein.

15. Notwithstanding the foregoing, the parties stipulate that Ukraine is not K.S.'s habitual residence as that term is defined under the Convention.

16. The parties likewise stipulate that neither party alleged that the United States was K.S.'s habitual residence. The parties acknowledge that the term "habitual residence" is a mixed question of fact and law relating to the place where a child is at home, at the time of the removal. Thus, the parties stipulate that the United States is not K.S.'s habitual residence as that term is defined under the Convention.

17. The Court is informed to the parties' agreement that K.S. will remain in Mother's care in North Carolina from the entry of this Consent Order until such time as Father visits North Carolina and spends a sufficient acclimation period of not less than two weeks with K.S., after which, on or before May 1, 2024, K.S. shall be placed into Father's care and will return to Germany with Father subject to the parties' mutual agreement thereafter.

18. The parties are informed and believe that pursuant to U4U regulations, once K.S. leaves the borders of the United States, he will lose his Temporary Protected Status (and would not be permitted reentry into the United States) pursuant to U4U.

19. Thus, the parties have requested a Decree ordering the parties to reasonably cooperate and exercise best efforts to procure a Ukrainian passport and United States tourist visa for K.S. to accommodate the child's international travel between the parties and as the parties may agree, TIME BEING OF THE ESSENCE.

20. The parties have stipulated to the allocation of K.S.'s travel expenses from North Carolina to Germany as hereinafter Decreed.

21. The Court is informed that the parties have reached a private interim custodial agreement, however, nothing herein is meant to be a custody determination. The merits of any custody claims are not at issue before this Court, and this Court lacks jurisdiction to consider the merits of any underlying custody claims, or decree orders thereof, pursuant to prevailing law.

22. Rather, this Consent Order is entered utilizing the Court's broad equitable powers to tailor the final disposition to the parties' specific and unique circumstances pursuant to their stipulations. And this Court finds that the stipulations and disposition are fair, reasonable, and serve the interests of the parties and meet the purposes of the Convention.

23. Except for the foregoing findings of fact, the Court need not make any other findings to support entry of this Consent Order, and the parties stipulate and consent to the limited findings and waive the necessity of any further findings of fact.

24. There shall be no need for oral testimony, written affidavits, or other evidence to support the entry of this Consent Order, pursuant to the stipulations and mutual consent of the parties.

25. The Court finds that the parties have the ability to comply with the terms and Decrees made in this Consent Order.

26. By their signatures affixed hereto, each party represents to the Court that he or she:

a.  Has been represented by legal counsel during the various proceedings in this case, including the negotiation, preparation, and entry of this Consent Order;

b.  Has carefully reviewed this Consent Order before signing the same and fully understands its contents and legal effect;

c.  Is mentally competent;

d.  Is not acting under any coercion or duress, but on the contrary, is freely and voluntarily consenting to the entry of this Consent Order; and

e.  Is able to comply with the provisions of this Consent Order.

27. After signing his or her name hereinbelow, each party agrees not to oppose the entry of this Consent Order by this Court or to challenge any provision of this Consent Order, provided however, that if for any reason this Court should decline to approve this Consent Order in the material form presented, the agreements herein are voidable at the sole discretion of any party and the terms of the agreements may not be used as evidence in the instant action or any other litigation existing or arising between the parties.

### III.   Conclusions of Law

28. The Court has jurisdiction over the claims and the parties, and venue is proper.

29. The Court has the power to enter this Consent Order resolving all claims brought under the Convention.

30. This Consent Order is consistent with the purposes of the Convention and serves the public interest.

31. Under Article 7(b), this Court may take provisional measures "to prevent further harm to the child or prejudice interested parties…"

### IV. Failure to Comply with Consent Order

32. This Consent Order is binding on Father and Mother. Any change in residency or other legal status shall in no way alter the status or responsibilities of the parties to reasonably comply with the terms of this Consent Order.

33. This Court has the inherent power to enforce this Consent Order. The parties may return to this Court to enforce the Decrees made herein. Thus, the Court retains jurisdiction for the purpose of enforcing the Consent Order by using its inherent contempt powers.

34. Each party shall identify hereinbelow their name, mailing address, email address, and telephone number for purposes of verifying that he or she is authorized to accept service of process with respect to all matters arising under or expressly relating to this Consent Order. Each party agrees to accept service of any contempt or "show cause" pleadings through the email address provided and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable foreign rules, or local rules of this Court, including but not limited to, service of a summons, provided such service is likewise delivered by email to the parties' respective counsel of record (said email being acknowledged on his or her signature line in the adjoining Joint Motion for Entry of Consent Order).

    a. Father: Martin Samaan
　　　　　　　　　　Zum Rötig 22
　　　　　　　　　　76646 Bruchsal, Germany
　　　　　　　　　　martinramzy2021@gmail.com
　　　　　　　　　　+4916095232632

    b. Mother: Daria Samaan aka Darina Samaan
　　　　　　　　　　539 Summerlea Drive
　　　　　　　　　　Fayetteville, NC 28311
　　　　　　　　　　Darina.samaan1@gmail.com
　　　　　　　　　　704-213-4871

## V. Decree

35. The parties shall keep each other informed of any changes to their residential address, email address and/or phone number, and within forty-eight (48) hours of any such changes, shall provide the other party with their new residential address, email address and/or phone number.

36. The Consent Preliminary Injunction shall remain in full force and effect until such time as K.S. is placed into Father's care for purposes of returning K.S. to Germany with Father. K.S. shall be placed into Father's care on or before May 1, 2024 for the purposes of returning K.S. to Germany. This Court orders and Decrees one exception to the Consent Preliminary Injunction such that Mother may travel with K.S. to the Ukrainian Embassy located in Washington D.C. in order to comply with other Decrees made herein, to wit: that the parties shall reasonably cooperate to obtain a Ukrainian passport and United States tourist visa for K.S. to accommodate his international travel between the parties. Notwithstanding the foregoing exception, Mother shall ensure that she and K.S. are present in Fayetteville, North Carolina at such time as Father visits North Carolina to acclimate and eventually return to Germany with K.S., as further Decreed herein. Father will provide advanced notice to Mother of his date of anticipated arrival in North Carolina.

37. At such time as K.S. is placed into Father's custodial care for purposes of returning to Germany, on or before May 1, 2024, the Consent Preliminary Injunction shall dissolve, and Father's counsel will file a motion and present a proposed order to cause such dissolution. Notwithstanding the foregoing provisions, both parties understand that the constraints and uncertainty of international travel may necessitate flexibility with regard to the May 1, 2024 deadline to the exchange K.S. and the acclimation period, and as such, both parties will be reasonable and flexible with respect to this exchange date should circumstances beyond their

control result in the parties needing to exchange K.S. for his return to Germany on some other date that is around May 1, 2024.

38. The parties shall reasonably cooperate and utilize best efforts to accomplish the Decree referenced above, that is to obtain suitable travel documentation by way of a Ukrainian passport and United States tourist visa to authorize K.S.'s international travel to and from the parents in their respective countries of residence. Each party shall promptly sign all necessary documents and undertake any acts which are necessary to carry out this term and give legal effect to the Decree, TIME BEING OF THE ESSENCE. Either party may present this Consent Order to assist in procuring these travel authorization documents for K.S., and such authorities may rely upon this Consent Order entered by this Court in processing the requests expeditiously.

39. This Consent Order is entered with the understanding that Father will likely need to travel to and from the United States numerous times every year to facilitate exchanges of the minor child; and that Mother may need to travel to and from the United States numerous times every year to facilitate exchanges of the minor child. This Consent Order may be used by both parties to assist them with any immigration issues relating to K.S., travel visa issues, and the like.

40. At such time as the Consent Preliminary Injunction is dissolved this matter shall be entirely resolved and disposed of, provided that the Court shall retain jurisdiction to enforce this Consent Order.

41. Father will travel to Fayetteville, North Carolina (or immediate surrounds) as soon as he is able after entry of this Consent Order. Upon Father's arrival in North Carolina, the parties will cooperate to promote an orderly acclimation period for Father and K.S. Father will spend not less than two calendar weeks in North Carolina, acclimating to K.S., after which, Father on his own election shall have the right to return to Germany with K.S.

42. As Decreed hereinabove, Father will be responsible for his own travel expenses to and from the United States, and Father will also be responsible for all travel expenses related to K.S.' return to Germany. Thereafter, any travel expenses related to custodial visitation is subject to the parties' joint agreements.

43. Each party shall bear his or her own litigation costs and attorneys' fees with respect to this matter, and the parties waive all claims her or she may have to attorneys' fees or reimbursement of costs or expenses. Nothing herein is meant to prevent a party from moving for fees and costs due to an alleged violation of this Consent Order.

44. At such time as the Consent Preliminary Injunction is dissolved, Father will report resolution of this matter to the Central Authority in Germany.

## VI. Final Judgment

45. Upon entry of this Consent Order by the Court, this Consent Order shall constitute a final judgment between and among Father and Mother, except as expressly Decreed herein. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

**IT IS SO ORDERED.**

Signed: March 21, 2024

*[Signature]*

Graham C. Mullen
United States District Judge